UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| GALVOTEC ALLOYS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:13-CV-664 |
| | § | |
| GAUS ANODES INTERNATIONAL, LLC, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

**I.      Background**

Now before the Court is Plaintiff Galvotec Alloys, Inc.'s ("Galvotec") Motion for Preliminary Injunction. (Dkt. No. 2). On December 19, 2013, Galvotec filed its Original Complaint against one of its competitors in the sacrificial anode business, Defendant Gaus Anodes International, LLC ("Gaus"), alleging that Gaus's use of Galvotec's federally registered trademarks constitutes trademark infringement under § 1114(1) of the federal Lanham Act and Texas common law, unfair competition under § 1125(a)(1)(A) of the Act and Texas common law, and false advertising under § 1125(a)(1)(B) of the Act. (Dkt. No. 1). Simultaneously, Galvotec filed the instant Motion seeking a preliminary injunction against Gaus's use of Galvotec's trademarks. (Dkt. No. 2). The Court held an evidentiary hearing on the Motion on June 20, 2014, and for the reasons stated on the record at the conclusion of that hearing, has set the case for an August 2014 trial on "liability issues" only. (Dkt. No. 36). The question now becomes whether a preliminary injunction, to be effective in the approximately two-month interim, is warranted. Upon consideration of Galvotec's Complaint, its Motion, Gaus's response (Dkt. No. 35), and the evidence presented to the Court at the June 20, 2014 hearing, the Court

finds that the Motion should be granted in part and denied in part for the following reasons.

## II.     Overview of Applicable Law and Evidence

The Lanham Act gives courts "the power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of §§ 1114 and 1125.  15 U.S.C. § 1116(a).  A preliminary injunction is an "extraordinary remedy" that should be granted only if the movant has clearly carried the burden of persuasion with respect to the following four factors: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) that the threatened injury outweighs any damage that the injunction may cause the opposing party; and (4) that the injunction will not disserve the public interest.  *E.g.*, *Allied Mktg. Grp., Inc. v. CDL Mktg., Inc.*, 878 F.2d 806, 809 (5th Cir. 1989).  Relevant to the Court's resolution of the Motion, the evidence presented to the Court is as follows.  Plaintiff Galvotec, founded in 1984 by Rogelio Garza and brothers Luis Miguel and Ramon Galvan, and Defendant Gaus, formed in 2005 by a third Galvan brother, Juan Antonio, are both in the business of producing sacrificial anodes for corrosion protection of structures used in the oil and gas industries.  (Dkt. No. 2-2 at ¶¶ 4, 5, 8, 9, 19; Dkt. No. 2, Exhs. A, J; Dkt. No. 35-2, Exh. H at pp. 15, 28).  Galvotec is based in McAllen and Gaus is based in Houston, Texas.  (Dkt. No. 2-2 at ¶ 1; Dkt. No. 35-2, Exh. H at pp. 49-50, 52).  Galvotec president Garza, who became the sole shareholder of Galvotec in 1987, testified before the Court that the sacrificial anode market consists of three to four U.S.-based competitors.  (Dkt. No. 2-2 at ¶¶ 1, 7; Dkt. No. 2, Exh. B).  Garza estimated that Galvotec's market share is about 70%, and that Gaus now has about 15% of the market.  Relevant to this lawsuit, Galvotec is the owner of two federal trademark registrations: (1) "Galvotec," registered with the U.S. Patent and Trademark Office on July 11, 2006; and (2) "GA," registered on November 17, 2009.  (Dkt. No. 2-2 at ¶ 12; Dkt. No. 2, Exhs. C, D).

**III.    "Galvotec" Trademark**

Galvotec challenges Gaus's use of the "Galvotec" trademark only insofar as Gaus has claimed corporate affiliation with and prior ownership of Galvotec in its advertisements and personal dealings with customers. Luis Antonio Galvan Luna ("Galvan Luna"), Juan Antonio Galvan's son and Gaus's current business development and quality assurance manager, testified that his father, Luis Miguel and Ramon Galvan, and a fourth Galvan brother, Irasema, formed Mexican parent company Grupo Falmex-Galvotec, S.A. de C.V. in 1977. (Dkt. No. 35-2, Exh. H at pp. 23, 30, 33). Of the companies owned by Grupo Falmex, Tecnologica Galvanica, S.A. de C.V. ("TG") was one that was "more involved with the sacrificial anodes." (Dkt. No. 35-2, Exh. H at pp. 30-31, 134-35). Galvan Luna testified that TG was "also known as Galvotec," former TG employee James Britton[1] indicated in his testimony that the company name was changed because Galvotec was easier for English-speakers to pronounce, and Garza testified that Galvotec was not used to refer to TG. (Dkt. No. 35-2, Exh. H at p. 30). Regardless of whether Mexican company TG was ever known as Galvotec, Garza provides uncontested evidence that Plaintiff Galvotec was separately formed as a U.S. company in 1984, that Luis Miguel and Ramon Galvan sold their shares in Galvotec to Nonferrous Metal Enterprises, Ltd. in 1986, and that this entity transferred its shares in Galvotec to Garza in 1987. (Dkt. No. 2-2 at ¶¶ 4, 6, 7; Dkt. No. 2, Exhs. A, B). Again, Gaus was formed as a U.S. company in 2005, although Galvan Luna testified that it did not begin operations until 2006. (Dkt. No. 35-2, Exh. H at p. 49). Since that time, Gaus has claimed through its website that it founded and sold "Galvotec," and evidence has been presented to the Court that it continues to claim that Gaus or Juan Antonio Galvan previously owned Galvotec. (Dkt. No. 2-2 at ¶ 28; Dkt. No. 2, Exh. O; Dkt. No. 35-2, Exh. H at p. 34).

---

[1] Britton testified that he is the current owner, president, and CEO of Deepwater Corrosion Services, Inc., a Houston-based company that provides corrosion control services for the oil and gas industries.

"[T]he focus of the Lanham Act," and particularly § 1125(a)(1)(B) under which Galvotec brings its false advertising claim, "is on commercial interests [that] have been harmed by a competitor's false advertising, and in secur[ing] to the business community the advantages of reputation and good will by preventing their diversion from those who have created them to those who have not." *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 563 (5th Cir. 2001) (quoting *Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221, 234 (3d Cir. 1998)) (internal citations and quotations omitted).[2]  To obtain an injunction against false advertising under the Lanham Act, a plaintiff must show that the defendant's advertisement or promotion is literally false or likely to mislead and confuse customers. *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 375 (5th Cir. 2002); *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000).  The evidence presented to the Court demonstrates that Gaus and/or its employees have promoted their products by claiming that Gaus and/or Juan Antonio Galvan founded, sold, and/or owned "Galvotec," which in the U.S.-based sacrificial anode market is likely to be interpreted by customers to mean Plaintiff Galvotec rather than the Mexican parent formed by the Galvan brothers.  Allowing this claim to continue would perpetuate Gaus's ability to divert to itself the reputation and good will created by Galvotec, whereas Gaus would not be injured by an injunction prohibiting it from making a misleading representation of fact to customers for a two-month period.  An injunction for the limited purpose of preventing Gaus from advertising or promoting its products on the basis of this misleading statement would further the above-stated goals of the Lanham Act and would not disserve the public interest.  Therefore, the Court will grant Galvotec's Motion in this limited respect.

---

[2]  Section 1125(a)(1)(B) imposes liability on "[a]ny person who…uses in commerce…any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which…in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his…goods, services, or commercial activities…." 15 U.S.C. § 1125(a)(1)(B).

### IV. "GA" Trademark

Galvotec challenges Gaus's use of the "GA" trademark as part of Gaus's name and logo. Garza testified that Galvotec began using "GA" in 1996 after he and his son developed a stylized "GA" logo as an abbreviation of Galvotec Alloys, Inc., the name under which the company had been doing business since 1984. *See also* (Dkt. No. 2-2 at ¶ 11). Garza also stated that "GA" is so closely associated with Galvotec that customers have come to refer to Galvotec-produced anodes as "GA" anodes. Galvan Luna testified that he and an architect friend developed the Gaus logo, which consists of the letters "Ga" or "GA" (allegedly to signify the element gallium as abbreviated in the periodic table, the fact that sacrificial anodes are also known as galvanic anodes, and the Galvan family name), followed by the letters "US" (allegedly to signify that Gaus is a U.S.-based company). The record also establishes that Gaus has marketed itself as GaUS and GAUS. (Dkt. No. 2-2 at ¶ 29; Dkt. No. 2, Exh. O; Dkt. No. 35, Exhs. C-F)

Regarding Galvotec's request that the Court enjoin Gaus's use of the "GA" trademark, the Court need only observe that Galvotec has failed to meet its burden to show the second and third elements for obtaining a preliminary injunction. "Absent a good explanation, a substantial period of delay [in seeking a preliminary injunction]…demonstrat[es] that there is no apparent urgency to the request for injunctive relief." *Daily Instruments Corp. v. Heidt*, 2014 WL 710683, at *15 (S.D.Tex. Feb. 21, 2014) (quoting *Wireless Agents, L.L.C. v. T-Mobile USA, Inc.*, 2006 WL 1540587, at *4 (N.D.Tex. June 6, 2006)). Thus, "[e]vidence of an undue delay in bringing suit may be sufficient to rebut the presumption of irreparable harm." *Id.* (quoting same). Considering Garza's admission that the sacrificial anode market has only three to four U.S.-based competitors, of which Gaus has been one since it began operations in 2006, Galvotec cannot claim only recent knowledge of the existence of Gaus or its use of "GA" in its name and logo. In fact, Garza stated that he "learned of or about Gaus the company" in 2008. (Dkt. No. 2-

2 at ¶ 20). Galvotec then took the step of registering "GA" as its trademark, and through counsel in March 2010, advised Gaus of its alleged infringement of this trademark. (Dkt. No. 2-2 at ¶ 28; Dkt. No. 2, Exhs. D, F, L). That Galvotec then delayed until December 2013 in requesting an injunction against Gaus's use of "GA" counsels against finding that irreparable injury would result if the Court declines to enter a two-month preliminary injunction.[3]  Further, given that Gaus has been operating under its name and logo since 2006, an order essentially requiring that it change its name to continue operating would result in damages, especially if liability issues are resolved in Gaus's favor.  For these reasons, the Court must deny Galvotec's request for a preliminary injunction against Gaus's use of the "GA" trademark.

## V.     Conclusion

For the foregoing reasons, the Court hereby **ORDERS** that Plaintiff Galvotec's Motion for Preliminary Injunction is **GRANTED IN PART** as follows:

Pending resolution of liability issues currently set for trial in August 2014, Defendant Gaus is hereby enjoined from advertising or promoting its products by claiming that Defendant Gaus and/or Juan Antonio Galvan founded, sold, and/or owned "Galvotec."

Also for the foregoing reasons, Plaintiff Galvotec's Motion is otherwise **DENIED**.

SO ORDERED this 26th day of June, 2014, at McAllen, Texas.

_____
Randy Crane
United States District Judge

---

[3] It is not as apparent that Galvotec unduly delayed in requesting an injunction against Gaus's claimed corporate affiliation with or ownership of Galvotec, since this claim has been communicated privately to customers.  In any event, Gaus has raised the affirmative defense of laches and at trial may assert that Galvotec delayed in bringing all of its claims. (Dkt. No. 7); *see Abraham v. Alpha Chi Omega*, 708 F.3d 614, 622 (5th Cir. 2013) (quoting *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 489-90 (5th Cir. 2008)) ("Laches is an inexcusable delay [in asserting one's trademark rights] that results in prejudice to the defendant.")